NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2167
_____

DASHAUN WHITE,
                                        Appellant
v.

STATE OF NEW JERSEY; MOUNTAINVIEW YOUTH CORRECTIONAL
FACILITY; LARRY GLOVER, MOUNTAINVIEW YOUTH
CORRECTIONAL FACILITY ADMINISTRATOR, INDIVIDUALLY AND UNDER
COLOR OF STATE LAW IN HIS CAPACITY AS THE ADMINISTRATOR OF
MOUNTAINVIEW YOUTH CORRECTIONAL FACILITY; NEW JERSEY
DEPARTMENT OF CORR; GEORGE HAYMAN, NEW JERSEY DEPARTMENT OF
CORRECTIONS COMMISSIONER, INDIVIDUALLY AND UNDER COLOR
OF STATE LAW IN HIS CAPACITY AS THE COMMISIONER OF THE
DEPARTMENT OF CORRECTIONS; DOMINICK IANTORNO, INDIVIDUALLY
AND UNDER COLOR OF STATE LAW IN HIS CAPACITY AS A CORRECTIONS
OFFICER; EDWIN RODRIGUEZ, INDIVIDUALLY AND UNDER COLOR OF
STATE LAW IN HIS CAPACITY AS A CORRECTIONS OFFICER IN
MOUNTAINVIEW YOUTH CORRECTIONAL FACILITY; JAMES WILLIAMS,
INDIVIDUALLY AND UNDER COLOR OF STATE LAW IN HIS CAPACITY
AS CORRECTION OFFICER IN MOUNTAINVIEW YOUTH CORRECTIONAL
FACILITY; ROBERT TRENT, INDIVIDUALLY AND UNDER COLOR OF STATE
LAW IN HIS CAPCITY AS A CORRECTIONS OFFICER IN MOUNTAINVIEW
YOUTH CORRECTIONAL FACILITY; MICHAEL FLOYD, INDIVIDUALLY AND
UNDER COLOR OF STATE LAW IN HIS CAPACITY AS A CORRECTIONS
OFFICER IN MOUNTAINVIEW YOUTH CORRECTIONAL FACILITY; RICHARD
COURO, INDIVIDUALLY AND UNDER THE COLOR OF STATE LAW IN HIS
CAPACITY AS A CORRECTIONS OFFICER IN MOUNTAINVIEW YOUTH
CORRECTIONAL FACILITY; RICHARD TATTOLI, INDIVIDUALLY AND UNDER
COLOR STATE LAW IN HIS CAPACITY AS A CORRECTIONS OFFICER IN
MOUNTAINVIEW YOUTH CORRECTIONAL FACILITY; CLINTON WHITE,
INDIVIDUALLY AND UNDER COLOR OF STATE LAW IN HIS
CAPACITY AS A CORRECTIONS OFFICER IN MOUNTAINVIEW YOUTH
CORRECTIONAL FACILITY; JOHN AND JANE DOES (1-100), INDIVIDUALLY
AND UNDER COLOR OF STATE LAW; XYZ ENTITIES OR CORPORATIONS
(1-100) INDIVIDUALLY AND UNDER COLOR OF STATE LAW

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 2:09-cv-4802)
District Judge: Hon. Stanley R. Chesler
_____

Submitted under Third Circuit LAR 34.1(a)
February 14, 2013

Before: HARDIMAN and GARTH, Circuit Judges, and STARK,[*] District Judge.

(Filed: March 1, 2013)

_____

OPINION OF THE COURT
_____

STARK, District Judge.

Appellant Dashaun White appeals from the district court's decision to grant summary judgment in favor of Appellees James Williams, Gerard Schenck, and Dominic Iantorno.[1] We will affirm.

I

As we write primarily for the parties, who are familiar with the record, we limit our discussion of the factual and procedural background to what is necessary for our resolution of the issues on appeal.

_____

[*] Honorable Leonard P. Stark, Judge of the United States District Court for the District of Delaware, sitting by designation.

[1]Appellant files this appeal only as to the 42 U.S.C. § 1983 and Eighth Amendment claims and only as to these three defendants.

2

Beginning on March 15, 2007, White was incarcerated at the Mountainview Youth Correctional Facility ("MYCF"), a youth detention facility operated by the New Jersey Department of Corrections. On May 23, 2007, White was moved to the Full Minimum Unit ("FMU"), the least restrictive unit in the MYCF, to which inmates are admitted based on good behavior. The FMU includes Building 1 and Building 2, which each have two wings, with 96 inmates residing in each wing. The inmates share dorm-style rooms called "pods" and each pod has an emergency exit door. Inmates housed in the FMU may obtain permission to move between Building 1 and Building 2 for medical treatment, classes, or to access the law library. Even without permission, it is possible – given the minimum security environment – for an inmate assigned to one building to enter the other.

On the morning of October 29, 2007, White suffered a horrific attack at the hands of other inmates. Just prior to the attack, Corrections Officer Recruit Dominic Iantorno, who was assigned to White's housing unit, permitted an inmate to open the emergency exit door to White's pod, in order to ventilate the area as it was being painted. Iantorno disabled the visible and audible alarms that would otherwise have signaled the door's opening. Iantorno acted either at his own discretion, or with the approval of his supervisor, Lieutenant Gerard Schenck, who was the highest ranking officer in the FMU at the time of the attack.

After the attack, White was helicoptered to Morristown Memorial Hospital, where he was found to have sustained extensive head trauma, fractures, and possible brain injury; he required a tracheotomy and feeding tube. White was hospitalized for several months, some of which he spent in a coma and on life support.

Special Investigations Division Investigator James Williams, who served as a "gang monitor," conducted a year-long investigation of the attack on White. During the investigation, Williams obtained White's "face sheet," a document which indicates whether an inmate has gang affiliations. Williams wrote "GKB food" on the face sheet, indicating that White was a target for inmates who were members of the "Gangster Killer Bloods" gang. Williams concluded that the attack was motivated by gang-related hostility, in light of White's status, or perceived status, as a Blood. Examination of phone records revealed that an inmate, a known Bloods-member, had been involved in a conversation on October 22, 2007, in which an unknown third-party said there needed to be a "hit" on White.

White filed his complaint on June 25, 2009 in New Jersey Superior Court, Essex County. Appellees removed the action to the District of New Jersey. On April 4, 2012, the district court granted summary judgment in favor of Appellees and denied White's motion for summary judgment.

## II

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction to review the district court's entry of final judgment pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant or denial of summary judgment. See Blackhawk v. Pennsylvania, 381 F.3d 202, 206 (3d Cir. 2004). We apply the same standard as the district court. See In re Mushroom Transp. Co., Inc., 382 F.3d 325, 335 (3d Cir. 2004). Accordingly, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment

4

as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c).

III

A

The district court granted summary judgment in favor of Williams. The Supreme Court has recognized that "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Liability may be established only if two conditions (in addition to causation) are met: (1) "[f]or a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the defendant prison official was deliberately indifferent to prisoner health or safety. Id. To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. As there is insufficient evidence from which to find Williams acted (or failed to act) with deliberate indifference to White's safety, we will affirm.

The record is devoid of evidence that Williams had knowledge of the risk of harm to White prior to the October 29, 2007 attack. White attempts to create a genuine issue of fact over Williams' knowledge by pointing to Williams' status as a gang monitor and participation in monthly gang meetings. White also relies on Williams' initial inability to recall when he concluded that White was "food" for other inmates. Even drawing all

5

inferences in favor of White, however, a reasonable factfinder could not find Williams had advance knowledge of the risk of harm to White.

Williams provided a sworn declaration that there were no gang meetings at any time between May 2007, when White was moved to the FMU, and the date of the attack. Two additional witness declarations corroborate that no gang meetings were held prior to the attack. Likewise, it is not reasonable to infer from Williams' failure to recall precisely when he learned White was "GKB food" that Williams acquired his knowledge before the attack, particularly as White's face sheet was printed after the attack and Williams wrote "food" on the sheet in reference to some information that he had received during the investigation. Finally, while a phone call relating to a "hit" on White evidently was recorded a week before the attack, the undisputed record establishes that Williams did not listen to the conversation until after the attack.

B

For similar reasons, the district court granted summary judgment in favor of Schenck and Iantorno. As the record does not support a finding that either Schenck or Iantorno had knowledge of a risk of harm to White prior to the attack, we will affirm.[2]

White now alleges he had suffered a gang-related injury in May 2007 and told correctional officers about repeated threats made to him, but nothing in the record supports a finding that White told Appellees about the purported threats. Nor is there any

---

[2]Like the district court, we find no occasion to assess whether Schenck and Iantorno should prevail based on the alternative grounds of qualified immunity.

support for a finding that Appellees came to know of a threat to White in any other manner.

Additionally, notwithstanding the opinion of White's expert, James Lawrence, the Director of Operations for the New York Commission of Corrections, the record does not support a finding that permitting an inmate to open an emergency exit door creates an obvious risk of substantial harm.[3] The FMU is the least restrictive custody setting in the MYCF. Inmates living in the FMU have demonstrated good behavior, have a relatively short time left on their sentences, and have no prior history of violent activity. In exchange for their good behavior, inmates in the FMU enjoy relative freedom. Nothing in the record establishes that, prior to October 29, 2007, any inmate inside the FMU was attacked for any reason – including gang-related issues or due to an emergency exit door being opened. Indeed, it is undisputed that it was normal practice to open the doors inside the FMU to permit painting or cleaning and it was normal practice not to place an officer to guard the door. We agree with the district court that even if such a practice is viewed as "unwise, and even negligent," there is insufficient evidence from which a reasonable factfinder could conclude that the practice constitutes an objectively obvious risk of harm or deliberate indifference.

## IV

Like the district court, we are sympathetic to White's injuries. Yet, as that court concluded, "the factual record, viewed in the light most favorable to the Plaintiff, cannot as a matter of law support the conclusion that the brutal attack on Plaintiff was the result

---

[3]Although White faults the district court for failing to address Lawrence's opinion, he is incorrect. Likewise, contrary to White's contentions, Lawrence's opinion was contradicted by Appellees' expert.

of any deliberate indifference or willful misconduct" on the part of Appellees. Accordingly, the district court's grant of summary judgment to Appellees and denial of summary judgment to Appellant will be affirmed.